UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BARBARA WITCHARD,                   :
                                    :
              Plaintiff,            :
                                    :              PRO SE
                                    :
          -against-                 :    05 Civ. 5957 (JSR) (THK)
                                    :
MONTEFIORE MEDICAL CENTER and       :    **REPORT AND RECOMMENDATION**
1199 SERVICE EMPLOYEES              :
INTERNATIONAL UNION,                :
                                    :
              Defendants.           :
------------------------------------X
**TO: HON. JED S. RAKOFF, United States District Judge.**
**FROM: THEODORE H. KATZ, United States Magistrate Judge.**

    Plaintiff, Barbara Witchard, brings this employment
discrimination action against Defendants 1199 Service Employees
International Union ("1199" or the "Union") and Montefiore Medical
Center ("Montefiore"), alleging disability discrimination and
wrongful termination. Presently before the Court is the Union's
Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules
of Civil Procedure, and Montefiore's Motion for Summary Judgment,
pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.
The motions were referred to this Court for a Report and
Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For
the reasons set forth below, this Court recommends that the Union's
Motion to Dismiss be granted, and Montefiore's Motion for Summary
Judgment be denied.

### PROCEDURAL HISTORY

    On June 21, 2004, Plaintiff filed an action in New York

**COPIES MAILED**
**TO COUNSEL OF RECORD ON** _7/19/06_

Supreme Court, Bronx County, against Montefiore and 1199, alleging breach of contract, disability discrimination in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12112-17 (the "ADA"), and duty of representation claims (the "2004 Action"). (See Verified Complaint, Witchard v. Montefiore Med. Ctr. and 1199 SEIU, Index No. 17899-2004 (N.Y. Sup. Ct. June 21, 2004) ("2004 Complaint"), attached as Exhibit ("Ex.") B to Declaration of Richard Reice, Esq., dated Dec. 21, 2005 ("Reice Decl.").) On August 4, 2004, Montefiore removed the action to the Southern District of New York. (See Petition For Removal, dated Aug. 6, 2004, attached as Ex. D to Reice Decl.) On Oct. 6, 2004, the Court (Rakoff, J.) dismissed the case with prejudice. (See Order, dated Oct. 6, 2004 ("Dismissal Order"), attached as Ex. E to Reice Decl.)

Subsequent to the dismissal of the 2004 Action, on December 15, 2004, Plaintiff filed a charge with the Equal Employment Opportunity Commission (the "EEOC") against Montefiore, alleging disability discrimination in violation of the ADA. (See Charge of Discrimination, dated Dec. 15, 2006 ("EEOC Charge"), attached as Ex. E to Reice Decl.) The EEOC issued right to sue letters to Plaintiff on February 28 and March 30, 2005. (See Dismissal and Notice of Rights, dated Feb. 28, 2005 ("Feb. Right to Sue Notice"), attached as Ex. F to Reice Decl.; Dismissal and Notice of Rights, dated Mar. 30, 2005 ("Mar. Right to Sue Notice"), attached as Ex.

B to Declaration of Clarissa Y. Jones, Esq., dated Nov. 23, 2005.)[1]

Plaintiff filed the present action on June 28, 2005. (See Complaint, filed June 28, 2005.)[2]  As of August 12, 2005, the Court's docket for this action indicated that Plaintiff had not served the Complaint.  Accordingly, this Court sent Plaintiff a letter informing her of the requirements of Rule 4(m) of the Federal Rules of Civil Procedure. (See Letter to Barbara Witchard, dated Aug. 12, 2006, attached as Ex. 3 to Affidavit of Barbara Witchard, dated Jan. 3, 2006 ("Pl.'s Aff.").)  The letter advised Plaintiff that if service was not made upon Defendants by October 26, 2005, and Plaintiff did not demonstrate good cause for such a failure, the Court would recommend that the action be dismissed. (See id. at 1.)

On September 23, 2005, Plaintiff filed an Amended Complaint, and an Amended Summons was issued as to both Defendants. (See Amended Complaint, filed Sept. 23, 2005.)  Plaintiff, proceeding in forma pauperis, used the United States Marshals Service to effect

---

[1] Defendant Montefiore submitted the February Notice as an exhibit to its Motion for Summary Judgment, and Defendant 1199 attached the March Notice as an exhibit to its Motion to Dismiss. The only discernable difference between the two notices is that the February Right to Sue Notice refers to EEOC Charge No. 160-2005-00511, while the March Right to Sue Notice refers to a Charge Number of 160-2005-00512.  Neither letter includes the name of a defendant or a caption.  For purposes of the present motion, the Court has used the March Notice submitted by the Union for statute of limitations purposes.

[2] The Complaint is stamped as received by the Southern District's Pro Se Office on May 26, 2005.

service.   The Marshals Service served Montefiore on November 2,
2005, and served the Union on November 3, 2005.

## DISCUSSION

I.  Montefiore's Motion for Summary Judgment

### A.  Untimely Service

Montefiore argues that Plaintiff's claims should be dismissed
because service of the Amended Complaint was untimely.   According
to Rule 4(m) of the Federal Rules of Civil Procedure,

> If service of the summons and complaint is not made upon
> a defendant within 120 days after the filing of the
> complaint, the court, upon motion or on its own
> initiative after notice to the plaintiff, shall dismiss
> the action without prejudice as to that defendant or
> direct that service be effected within a specified time;
> *provided that if the plaintiff shows good cause for the
> failure, the court shall extend the time for service for
> an appropriate period.*

Fed. R. Civ. P. 4(m) (emphasis added).   Thus, courts have
discretion to extend the deadline for service. See id.; Sidney v.
Wilson, 228 F.R.D. 517, 521 (S.D.N.Y. 2005).   In addition, a court
can disregard a failure to meet the 120-day limit for service if a
plaintiff can show "good cause" for the failure to timely serve.
See Fed. R. Civ. P. 4(m); Romandette v. Weetabix Co., 807 F.2d 309,
311 (1986).

Plaintiff filed the present action on June 28, 2005, and filed
an Amended Complaint on September 23, 2005.   Plaintiff submitted
her Amended Complaint and Amended Summons to the United States
Marshals Service for service on both Defendants on September 30,

4

2006. (See U.S. Dep't of Justice United States Marshals Service Process Receipts, stamped received on Sept. 30, 2005 ("Process Receipts").) Montefiore was served on November 2, 2005, and the Union was served on November 3, 2005.

Pursuant to Rule 4(m), Plaintiff had until October 26, 2006 to properly serve Defendants. Because Plaintiff is proceeding in forma pauperis, she was entitled to use the United States Marshals Service to effect service. See Thompson v. Maldonado, 309 F.3d 107, 109 n.2 (2d Cir. 2002). Service of the Amended Complaint on Montefiore and the Union fell outside the period allowed for service by seven days and eight days, respectively.

Plaintiff has not argued good cause in her response to Montefiore's motion. This is due most likely to a glaring typo in Montefiore's Memorandum, stating that "Plaintiff served this revised Complaint on Montefiore on October 2, 2005, one hundred twenty-eight days after the commencement of the lawsuit." (See Montefiore's Mem. at 2.) Plaintiff takes this statement as an admission that Montefiore was served on October 2, 2005, twenty-four days before the end of the 120-day service period. (See Pl.'s Aff. at 2.) The Docket shows that, in fact, Montefiore was served on November 2, 2005, 127 days after the filing of the original Complaint.

Even though Plaintiff bears the burden of proving the adequacy of service once it has been challenged, the Court may take judicial

notice of facts contained in the record in adjudicating a motion for summary judgment. See Kaggen v. I.R.S., 71 F.3d 1018, 1019-20 (2d Cir. 1995) (on motion for summary judgment, the court may take judicial notice of facts not reasonably subject to dispute which are capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned); cf. Sidney, 228 F.R.D. at 522 (court may take judicial notice of facts contained in the record in adjudicating a motion to dismiss). The Marshals Service's Process Receipts in the Court's file show that Plaintiff submitted the Amended Summons and Amended Complaint to the United States Marshals Service for service on both Defendants on September 30, 2006. (See Process Receipts.) Plaintiff gave the Marshals Service almost a month before the expiration of the 120-day period to serve Defendants. "'The failure of the Marshals Service to properly effect service of process constitutes 'good cause' within the meaning of Rule 4(m)." McCalmann v. Partners in Care, No. 01 Civ. 58447 (SHS) (FM), 2002 WL 856465, at *1 (S.D.N.Y. Apr. 25, 2002) (Report and Recommendation, adopted July 22, 2002) (citation omitted); see also Jackson v. Foley, 156 F.R.D. 545, 547 (E.D.N.Y. 1994) (noting that courts have found that reliance on the Marshals Service can be considered good cause). Thus, the Court finds that Plaintiff's use of the United States Marshals Service constitutes good cause, because Plaintiff gave the Marshals Service ample time to carry out timely service. Cf. Romandette, 807 F.2d at

311 (reversing dismissal based on failure to effect service and finding good cause where incarcerated pro se plaintiff had timely requested the Marshals Service to effect service); McCalmann, 2002 WL 856465, at *1-2 (finding good cause for untimely service where pro se plaintiff delivered summons and complaint to the Marshals Service twenty days prior to the deadline for service, and the Marshals Service took three weeks to effect service); Jackson, 156 F.R.D. at 547 (denying motion to dismiss for improper service where the defendants were properly served fourteen days after the expiration of the 120-day limit).

Further, Defendants have not shown that they would be unduly prejudiced by allowing this action to continue. Under the circumstances, Plaintiff's time to effect service should be extended to November 3, 2005, nunc pro tunc, the date by which the Marshals Service had served both Defendants. Based on this extension, Montefiore's motion for summary judgment based on untimely service should be denied.

B. Failure to Serve the Original Complaint

Montefiore argues that Plaintiff's claims should be dismissed because Plaintiff failed to serve Montefiore with the original Complaint, filed on June 28, 2006. (See Montefiore's Mem. at 4.) Montefiore seems to be arguing that Plaintiff's service of the Amended Complaint, on November 2, 2005, did not correct this deficiency. Montefiore does not cite to any authority for this

7

proposition, and the Court rejects Montefiore's argument.

Service of an amended complaint within 120 days of filing suit has been held to satisfy Rule 4(m), even though a defendant has not been served with the original complaint. See Bakal v. Ambassador Constr., No. 94 Civ. 584 (JSM), 1995 WL 447784, at *2 (S.D.N.Y. July 28, 2006). "[If a] plaintiff amends his complaint, to require service of the original complaint rather than the amended complaint would promote a useless exercise and exalt form over substance." Crossen v. Bernstein, No. 91 Civ. 3501 (PKL), 1994 WL 281881, at *8 (S.D.N.Y. June 23, 1994). Plaintiff gave her Amended Complaint to the United States Marshals Service almost a month before Rule 4(m)'s 120-day period was set to expire. The Court has found that Plaintiff's use of the Marshals Service satisfies Rule 4(m)'s requirements, and has deemed the Amended Complaint timely served. Therefore, Defendant's argument that Plaintiff's service of the Amended Complaint, as opposed to her original Complaint, fails to meet the requirements of Rule 4(m), is without merit.

II.  1199's Motion to Dismiss

A.  Time-Bar

In a similar vein, the Union argues that this action is time-barred because Plaintiff's filing of the Amended Complaint in September 2005 occurred more than 90 days after she received her Right to Sue Notice from the EEOC. (See Memorandum of Law in Support of Defendant 1199 SEIU United Healthcare Workers East

Motion to Dismiss, dated Nov. 23, 2005 ("Union's Mem."), at 5.) To be timely, actions for violations of the ADA must be filed within 90 days of receipt of notice from the EEOC. See 42 U.S.C.A. § 12117 (applying Title VII's procedures for civil actions by aggrieved persons, 42 U.S.C.A. §2000e-5(f)(1), which require that civil actions be brought within 90 days after the EEOC gives notice of dismissal).

Plaintiff filed a charge with the EEOC alleging disability discrimination in violation of the ADA on December 15, 2004. (See EEOC Charge.) The EEOC issued a right to sue notice to Plaintiff on March 30, 2005. (See Mar. Right to Sue Notice.) The Letter informed Plaintiff that claims under the ADA **"must be filed WITHIN 90 DAYS of receipt of this Notice."** (See id.) (emphasis in original.) This means that, using the date on the March Right to Sue Notice, Plaintiff would have had to file her Complaint by June 29, 2005. Plaintiff's Complaint is stamped as received by this Court's Pro Se Office on May 26, 2005, and was filed on June 28, 2006. Plaintiff's Complaint was officially filed one day before the limitations period expired on June 29, 2005, and therefore, was timely filed.[3]

_____

[3] The delay between Plaintiff's submission of her Complaint to the Pro Se Office and the Complaint's official filing occurred because Plaintiff's Complaint was accompanied by an application to proceed in forma pauperis, which was granted on June 27, 2005.

Moreover, for statute of limitations purposes, the filing date is considered to be that date on which the Complaint was filed with the Pro Se Office, which was May 26, 2005. See Toliver v. County of Sullivan, 841 F.2d 41, 42 (2d Cir. 1988) (holding that pro se complaint was timely filed where it was stamped as received by the pro se clerk prior to the expiration of the EEOC's 90-day limitations period, even though the complaint was not filed until more than 90 days after the date on the right to sue letter). Even if the date of the February Right to Sue Notice, February 28, 2005, is used for statute of limitations purposes, Plaintiff would have timely commenced this action by submitting her Complaint to this Court's Pro Se Office before May 30, 2005.

The timeliness of this action is not effected by the date on which Plaintiff served the Amended Complaint, rather than the original Complaint, on Defendants. Plaintiff's filing of the Complaint with the Pro Se Office on May 26, 2005 complied with the 90-day statute of limitations, and her service of the Amended Complaint using the Marshals Service is deemed to have met the requirements of Rule 4(m). Thus, the Union's argument that this action is time-barred is without merit.

B.  Res Judicata

The final argument raised in the Union's Motion to Dismiss is that this action should be dismissed under the doctrine of res judicata. (See Union Mem. at 6.)   The Union contends that

Plaintiff's 2004 Action, filed against the Union and Montefiore on June 21, 2004, alleged duty of fair representation claims and disability discrimination claims. (See id.)  The 2004 Action was dismissed with prejudice on October 6, 2004. (See Order, dated Oct. 6, 2004, attached as Ex. E to Reice Decl.)  The Union alleges that although Plaintiff's current pro se Amended Complaint is much more detailed than the complaint filed by her attorney in the 2004 Action, the conduct, parties, and time period alleged in this action are identical to those alleged by Plaintiff in her first suit. (See Union Mem. at 7.)

### 1. Applicable Law

"Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994); accord Weinraub v. Glen Rauch Sec., Inc., 399 F. Supp. 2d 454, 459 (S.D.N.Y. 2005); see also Houbigant, Inc. v. Dev. Specialists, Inc., 229 F. Supp. 2d 208, 220 (S.D.N.Y. 2002) ("Though res judicata is usually plead in an answer, a Rule 12(b)(6) dismissal on the basis of the doctrine is appropriate when it is clear . . . that plaintiff's claims are barred as a matter of law.") (citing Day v. Moscow, 955 F.2d 807, 811 (2d Cir. 1992)).

Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been

raised in that action." <u>San Remo Hotel, L.P. v. City and County of</u> <u>San Francisco</u>, 545 U.S. 323, 332, 125 S. Ct. 2491, 2500 n.16 (2005) (quoting <u>Allen v. McCurry</u>, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980)); <u>accord</u> <u>Aurecchione v. Schoolman Transp. Sys., Inc.</u>, 426 F.3d 635, 640 (2d Cir. 2005); <u>King v. Fox</u>, 418 F.3d 121, 131 (2d Cir. 2005). In other words, "when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy . . . ." <u>SEC v. First Jersey Sec., Inc.</u>, 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting <u>Nevada v. United</u> <u>States</u>, 463 U.S. 110, 129-30, 103 S. Ct. 2906, 2918 (1983)); <u>accord</u> <u>Interoceanica Corp. v. Sound Pilots, Inc.</u>, 107 F.3d 86, 90 (2d Cir. 1997).

To demonstrate that a claim is precluded based upon <u>res</u> <u>judicata</u>, the moving party must show that: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. <u>See</u> <u>Monahan v. New York City Dep't of</u> <u>Corr.</u>, 214 F.3d 275, 285 (2d Cir. 2000) (citations omitted); <u>accord</u> <u>Pike v. Freeman</u>, 266 F.3d 78, 91 (2d Cir. 2001); <u>Melwani v. Jain</u>, No. 02 Civ. 1224 (DF), 2004 WL 1900356, at *1 (S.D.N.Y. Aug. 24, 2004).

### 2. Application

In order to satisfy the first prong under <u>Monahan</u>, the Union

12

must show that there was an adjudication on the merits of Plaintiff's first action. See Monahan, 214 F.3d at 285. An "adjudication on the merits" has "a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted); accord Cotto v. Herbert, 331 F.3d 217, 231 (2d Cir. 2003); Holmes v. Artus, No. 03 Civ. 7065 (LAP) (GWG), 2005 WL 1027195, at *10 (S.D.N.Y. May 4, 2005). A judgment is final when it puts an end to the particular litigation, "[leaving] nothing for the court to do but execute the judgment." Kamerling v. Massanari, 295 F.3d 206, 213 (2d Cir. 2002); accord In re Ad Hoc Committee of Tort Victims, No. 04 Civ. 08934 (CSH), 2005 WL 267564, at *2 (S.D.N.Y. Feb. 3, 2005).

The Union emphasizes that the 2004 Action was dismissed with prejudice on October 6, 2004. (See Union Mem. at 6-7.) The Order explaining the dismissal is two sentences long: "For the reasons stated from the bench, see transcript, 10/5/04, the complaint is dismissed with prejudice. Clerk to enter judgment." (See Dismissal Order.) Neither Defendant has explained the basis for the dismissal. Plaintiff though, attached the transcript of the hearing, where her case was dismissed, to her affidavit. (See Hearing Transcript ("Hr'g Tr."), attached to Pl.'s Aff.) The hearing appears to be an oral argument on Defendants' motion to

13

dismiss the 2004 Action. During the hearing, the Court dismissed Plaintiff's state law claims as preempted by the Labor Management Relations Act. (See id. at 4.) After argument by counsel, the court then dismissed Plaintiff's LMRA claims against the Union, finding that Plaintiff had failed to exhaust her union remedies. (See id. at 9.) The court noted that it "would be futile to allow repleading given what has been put forward by plaintiff's counsel and his client in this very motion practice." (See id. at 9.)

Dismissal with prejudice as a result of a successful motion to dismiss is usually considered a final adjudication on the merits. The Second Circuit has stated,

> [I]t is well settled that a judgment dismissing a complaint on a general demurrer or its modern substitute under the Federal Rules a motion to dismiss for failure to state a claim upon which relief can be granted and without reservation of any issue, is presumed to be upon the merits, unless the contrary appears of record or is stated in the decree, and the judgment has the same effect of res judicata as though rendered after trial, in a subsequent suit on the same claim.

Mitchell v. Nat'l Broad. Co., 553 F.2d 265, 271 (2d Cir. 1977); see also Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976) (stating that "judgments under 12(b)(6) are on the merits, with res judicata effects"). However, a dismissal for failure to exhaust administrative remedies is not necessarily an adjudication on the merits. Such dismissals are normally without prejudice, and do not bar instituting another suit after administrative remedies are properly exhausted. See

14

generally, <u>Criales v. Am. Airlines, Inc.</u>, 105 F.3d 93, 95-97 (2d Cir. 1997); <u>see also</u> <u>Heckman v. Olive</u>, No. CV 88-2981 (RJD), 1992 WL 390249, at *4 (E.D.N.Y. Dec. 9, 1992) ("A dismissal for failure to exhaust administrative remedies does not preclude litigation of the claim once the exhaustion requirement has been satisfied."). Conversely, a dismissal is considered to be on the merits where it is no longer possible to properly exhaust administrative remedies. <u>Cf.</u> <u>Henneberry v. Sumitomo Corp. of Am.</u>, No. 04 Civ. 2128 (PKL), 2005 WL 991772, at *4 (S.D.N.Y. Apr. 27, 2005) ("If the district court decides to dismiss any claim, that dismissal is generally considered a judgment on the merits, unless dismissed for some 'curable defect'") (citing <u>Criales</u>, 105 F.3d at 98).

Plaintiff's claims in the 2004 Action against the Union were dismissed for her failure to exhaust her union remedies. Specifically, the court found that although Plaintiff alleged that the Union refused her request to file a grievance, she had not pleaded that she was denied an opportunity to appeal this decision. (Hr'g Tr. at 8-9.)

"In this Circuit, it is well established that Section 301 of the LMRA requires the employee to exhaust grievance procedures before bringing a claim." <u>See</u> <u>Henry v. Cmty. Res. Ctr., Inc.</u>, No. 95 Civ. 5480 (AJP) (JGK), 1996 WL 251845, at *5 (S.D.N.Y. May 13, 1996). Nevertheless, the exhaustion requirement under LMRA is not absolute, but rather, "the requirement that a plaintiff exhaust

15

internal union remedies lies within the court's discretion."
Maddalone v. Local 17, United Bros. of Carpenters and Joiners of
Am., 152 F.3d 178, 186 (2d Cir. 1998) (citing Clayton v. Int'l
Union, United Auto., Aerospace, and Agric., 451 U.S. 679, 689, 101
S. Ct. 2088, 2095 (1981)); see also Clarke v. Commc'ns. Workers of
Am., 318 F. Supp. 2d 48, (E.D.N.Y. 2004); Henry, 1996 WL 251845, at
*5.  The Supreme Court has held that a court should consider three
factors in exercising this discretion, but if none of these factors
exist, the exhaustion requirement advances national labor policy of
encouraging private resolution of contractual disputes. See Henry,
1996 WL 251845, at *5-6.[4]  In the 2004 Action, the court exercised
its discretion to require Plaintiff to meet the LMRA's exhaustion
requirement, and then, finding that Plaintiff had failed to exhaust
her administrative remedies, dismissed her LMRA claims.

Because the 2004 Action was dismissed due to Plaintiff's
failure to exhaust her administrative remedies with the Union, the
court's dismissal with prejudice would not operate as an

---

[4] The three factors are "'[F]irst, whether union officials
are so hostile to the employee that he could not hope to obtain a
fair hearing on his claim; second, whether the internal union
appeals procedures would be inadequate either to reactivate the
employee's grievance or to award him the full relief he seeks . .
.; and third, whether exhaustion of internal procedures would
unreasonably delay the employee's opportunity to obtain a
judicial hearing on the merits of his claim.'" Maddalone, 152
F.3d at 186 (quoting Clayton, 451 U.S. at 689, 101 S. Ct. at
2095).

16

adjudication on the merits if the dismissal was due to a "curable defect." However, the court's Dismissal Order dismissed the entire 2004 Action with prejudice, and ordered the clerk to enter judgment, (see Dismissal Order), rather than ordering the case stayed, or dismissing the case without prejudice, to allow Plaintiff an opportunity to exhaust her administrative remedies. At the hearing in the 2004 Action, the Court determined that it would be futile to allow repleading. (Hr'g Tr. at 8-9.) This futility stemmed from Plaintiff's acknowledgment at the hearing that she did not file an appeal within the Union (see id.), and, it appears that by October 2004, Plaintiff could no longer file such an appeal. Thus, the 2004 Action was dismissed, because the defect in Plaintiff's pleadings was incurable.[5] Cf. Berry v. Kerik, 345 F.3d 126, 128 (2d Cir. 2003) (holding that lawsuit brought under § 1983 alleging mistreatment while incarcerated was properly dismissed with prejudice for failure to exhaust administrative remedies, where administrative remedies had become unavailable); Cordoba v. Beau Deitl & Assocs., No. 02 Civ. 4951 (MBM), 2003 WL 22902266, at *11 (S.D.N.Y. Dec. 8, 2003) (dismissing Title VII and ADEA retaliation claims with prejudice where Plaintiff had failed to exhaust administrative remedies, and the time to cure the defect

---

[5] Unlike her union remedies, Plaintiff did file a charge with the EEOC in December 2004 in order to exhaust her ADA claims against Montefiore.

had expired). In light of the dismissal with prejudice of the 2004 Action, and the court's conclusion that repleading would have been futile, this Court concludes that, as to the claims against the Union, the 2004 Action was adjudicated on the merits for res judicata purposes.

The second prong of Monahan is clearly met, as Plaintiff filed suit against the Union in the 2004 Action and the present action. Thus, to satisfy the remaining prong of Monahan, the Union must show that Plaintiff's current claims were raised, or at least could have been raised, in her first action. For the purposes of res judicata, the Second Circuit has explained that,

> [w]hether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.

NLRB v. United Tech. Corp., 706 F.2d 1254, 1260 (2d Cir. 1983) (citations omitted); accord Pike, 266 F.3d at 91; Interoceanica Corp., 107 F.3d at 90; First Jersey Sec., Inc., 101 F.3d at 1463-64.

It is therefore necessary to determine whether the instant action arises from the same transaction — or "nucleus of operative fact" as the 2004 Action. Interoceanica Corp., 107 F.3d at 90 (citation omitted); accord Waldman v. Vill. of Kiryas Joel, 207 F.3d 105, 108 (2d Cir. 2000). "To ascertain whether two actions

spring from the same transaction or claim, we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Interoceanica Corp., 107 F.3d at 90-91 (quoting Restatement (Second) of Judgments § 24(2) (1982)) (internal quotation marks omitted); accord Waldman, 207 F.3d at 108.

In the 2004 Action, Plaintiff's claims arose out of her employment with Montefiore. Plaintiff alleged that she worked as an electrophysiology technician from February 1988 until April 2004, at which time she was displaced from her position. (See 2004 Complaint ¶¶ 2-3.) Plaintiff claimed that Montefiore failed to offer her another position that accommodated her disability, thus violating her rights under the ADA.

Plaintiff also claimed that she was a member of the Union and a protected employee under the collective bargaining agreement (the "CBA") with Montefiore. (See id. ¶¶ 4-5.) Plaintiff's third and fourth causes of action in the 2004 Action claimed intentional and negligent failure to represent by the Union. The 2004 Complaint, which was filed on June 22, 2004, alleged that Plaintiff, as a member of the Union, contacted several union representatives and requested that a grievance be filed with Montefiore over its failure to provide her a reasonable accommodation because of her

disability. (See id. ¶ 23.) Plaintiff claimed that the Union refused to file a grievance on Plaintiff's behalf, in breach of its duty of representation. (See id. ¶¶ 24, 26-27.)

In the instant action, Plaintiff has filed a 62-page Amended Complaint. In the Amended Complaint, Plaintiff goes into great detail about her alleged disability, her attempts to inform Montefiore that she needed accommodation, and the various positions she was offered after she was displaced from her original job. (See Amended Complaint at 1-16.) The main focus of the Amended Complaint is Montefiore's alleged failure to accommodate Plaintiff's disability. Plaintiff uses the term "defendants" throughout the Amended Complaint, but provides little detail as to her interactions with the Union. Plaintiff does describe one meeting with the Union in March 2004 during which she allegedly informed the Union that she required job accommodations, but was discouraged by the Union from mentioning it to Montefiore. (See id. at 2-3.) Plaintiff then allegedly met with both Defendants that same month, and informed Montefiore of her need for reasonable accommodation.

Under a "Breach of Contract Claim" heading, Plaintiff also details the years leading up to her displacement from her position as a electrophysiology technician. Montefiore allegedly instructed Plaintiff to enroll in a physician's assistant training program in preparation for the elimination of her current position. (See id.

at 50-52.) Although Plaintiff started taking classes, she alleges that when her position was eliminated in April 2004, she was told that she could not apply for the physician's assistant training program, and must stop attending classes, which conflicted with the schedule required by the first position she was offered. (See id. at 52-54.) When Plaintiff allegedly asked the Union, in April 2004, about the program and issues related to her disability, she was told that the Union could not revisit the issue with the decisionmaker at Montefiore. (See id. at 54.) She also claims that she was told by the Union that she should accept the position she was offered, or she risked termination. (See id.)

The claims raised in the present action with regard to the Union's failure to represent Plaintiff adequately as a protected member of the Union under the CBA clearly arise out of the same nucleus of operative facts as Plaintiff's 2004 Action — namely, her employment with Montefiore, the circumstances surrounding her displacement from her position as an electrophysiology technician in April 2004, her repeated requests for reasonable accommodation in the spring of 2004, and the Union's alleged failure to assist Plaintiff in securing an accommodation. These allegations, covering the same time period as those made in the 2004 Complaint, are the same transaction for res judicata purposes.

The Court notes, however, that Plaintiff's Amended Complaint also contains allegations about a few events which allegedly

occurred subsequent to the filing of the 2004 Action, on June 22, 2004.  Claims arising subsequent to a prior action need not, and often could not, have been brought as part of the prior action. See Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 383 (2d Cir. 2003). Such claims are not barred by res judicata, "regardless of whether they are premised on facts representing a continuance of the same 'course of conduct': [t]hat both suits involved 'essentially the same course of wrongful conduct' is not decisive." Id.  "If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion." First Jersey Sec. Inc., 101 F.3d at 1464.

First, the Amended Complaint describes a June 30, 2004 meeting, at which Montefiore took the position that, in the prior three months, it had offered Plaintiff three different accommodations, which she refused. (See Amended Compl. at 29.) After June 30, 2004, Plaintiff considered herself terminated from employment.  Plaintiff also describes Montefiore's effort to offer her job accommodations in early July 2004, but Plaintiff viewed the offer as coming too late, since Plaintiff viewed her employment as having been terminated earlier, and Plaintiff had already filed her first action.  Plaintiff does not make any specific allegations against the Union relating to these events.  Moreover, it is not these events which form the basis of Plaintiff's allegations of discrimination and violation of the duty of fair representation.

Plaintiff does not claim discrimination on the basis of that meeting, as she concedes that all of the discrimination occurred in the prior three months, when Montefiore failed to offer her positions which accommodated her disability, and the Union failed to grieve this alleged discrimination. (See id. at 43-44.) Thus, Plaintiff's Amended Complaint in this action does not add any new allegations related to the duty of fair representation that were not raised against the Union as part of the prior action. Accordingly, Plaintiff's inclusion in her Amended Complaint of these events, which are simply a postscript to the earlier conduct which provides the basis for Plaintiff's claims, does not alter the Court's conclusion that Plaintiff's claims against the Union are barred by res judicata.

Plaintiff also complains about the Union's behavior during the EEOC investigation, which was based on the EEOC Charge she filed subsequent to the dismissal of the 2004 Action. Plaintiff alleges that the Union, as well as Montefiore, made false and misleading statements to the EEOC during the investigation. (See id. at 16-26.) Plaintiff goes into great detail recounting the Union's responses to the EEOC, and spends pages rebutting the explanations provided by the Union. (See id.) As a result of the Union's purposefully misdirecting the investigation, Plaintiff claims she was embarrassed and humiliated. (See id. at 26.)

The Union's Memorandum does not address this portion of

Plaintiff's Amended Complaint, perhaps because Plaintiff does not explicitly state any additional causes of action based on these allegations. Nor could the Union's defense against the charges before the EEOC implicate any duty it had to represent Plaintiff while she was employed by Montefiore. Moreover, what Plaintiff appears to be claiming is that the Union's false statements to the EEOC constituted defamation or libel. "It is well settled in New York [] that statements made in quasi-judicial proceedings, including proceedings by agencies such as the EEOC, are protected by an absolute privilege." Hinds v. Magna Fabrics, Inc., No. 96 Civ. 1383 (DC), 1997 WL 309378, at *5 (S.D.N.Y. June 9, 1997); see also Allen v. St. Cabrini Nursing Home, Inc., No. 00 Civ. 8558 (CM), 2001 WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001) ("Statements submitted to administrative agencies are protected by absolute privilege.") Accordingly, the statements made by the Union to the EEOC cannot serve as the basis for a claim of defamation. See Allen, 2001 WL 286788, at *6 (dismissing cause of action for defamation arising out of statements made by defendant to EEOC in its "Statement of Position"); Hinds, 1997 WL 309378, at *5 (dismissing defamation claim premised on written statements submitted by Defendant to the EEOC in response to inquiries made by the EEOC concerning the plaintiff's claim of discrimination).

Therefore, the Court concludes that Plaintiff's claims against the Union in the present action are barred by res judicata, because

they are precisely the claims she asserted against the Union in the 2004 Action.  To the extent that her allegations against the Union relating to the EEOC investigation are not barred by res judicata, the allegations do not state a claim for which relief can be granted.  Consequently, the Court recommends that Plaintiff's claims against the Union be dismissed with prejudice.

**CONCLUSION**

For the reasons set forth above, this Court recommends that the Union's Motion to Dismiss be granted.  The Court further recommends that Montefiore's Motion for Summary Judgment be denied in all respects.

Pursuant to 28 U.S.C. 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and 6(e).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, U.S.D.J., and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 149-52, 106 S. Ct. 466, 472-3 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human

<u>Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Respectfully Submitted,

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: July 19, 2006
      New York, New York

Copies mailed to:

Barbara Witchard
1860 Grand Concourse, #6D
Bronx, New York 10457

Richard Malcom Reice
Brown Raysman Millstein Felder & Steiner, LLP
900 Third Avenue
New York, NY 10022

Clarissa Yvette Jones
Levy Ratner, P.C.
80 Eighth Avenue
8th Floor
New York, NY 10011